## Supreme Court—General Term—First Department.

### *June,* 1886.

### PEOPLE *v.* OGLE.

#### EVIDENCE OF PRIOR OFFENSES—CORROBORATION.

Upon the trial defendant was asked whether he had not been arrested, indicted and tried for shooting a man. He testified that he was innocent of the offense and had been acquitted. *Held,* that the defendant was not prejudiced by the allowance of the questions so answered by him in the negative.

Evidence of flight by the prisoner after the commission of the offense is admissible in evidence.

There should be some facts deposed to independently of the evidence of an accomplice, which taken by themselves lead to the inference not only that a crime has been committed but that the prisoner is implicated in it. Evidence of corroboration may consist of a series of facts having no force unless in combination, and may be shown by more than one witness or as occurring on more than one occasion.

APPEAL by the defendant, George Ogle, from a judgment of the Court of General Sessions of New York county, Hon. FREDERICK SMYTH presiding, on 4th February, 1886, convicting him of murder in the second degree.

*William F. Howe,* for defendant, appellant.

There was error in permitting the district attorney to inquire as to a previous arrest and indictment of the defendant for shooting. People v. Irving, 2 N. Y. Crim. Rep. 171; People v. Brown, 72 N. Y. 571; Ryan v. People, 79 Id. 600; People v. Crapo, 76 Id. 290; People v. Gay, 7 Id. 378; Jackson v. Osborn, 2 Wend. 555.

In each of the cases in which questions as to arrest and accusations have been held incompetent, the reason for such incompetency proceeded upon the theory that arrests and accusations proved nothing; that the person so arrested or accused was to be presumed innocent.

But it was held that, notwithstanding this presumption, the evidence must necessarily prejudice the defendant with the jury. Can it be said that the actual acquittal of the defendant could be of any greater effect than the presumption of innocence which the law entertains?

Let us suppose that in the case of Crapo (76 N. Y. 290) the further fact appeared that the judge at the trial, while he permitted the defendant to be asked these incompetent questions on cross-examination, had, in his charge, called the attention of the jury to the fact that the law presumed the defendant to be innocent of the charges and indictment for bigamy, for which, up to that time, he had not been tried, can it be argued that, because the jury were so informed, because they clearly must have understood from the court that the defendant must be presumed to be innocent of these charges; that the error in the allowance of such questions would have been any the less? The error would have been the same.

The exclusion of these questions is not on the theory that the jury might believe the witness to have been guilty of the offense because he was arrested or indicted, but because of the fact that the jury is apt to be prejudiced against a witness who has been arrested or indicted.

In the People v. Brown (72 N. Y. 571), the question was as to how often the defendant had been arrested; and nothing was intimated as to whether these arrests were for any crime whatever, and still they were held to have been prejudiced. And it will be seen that in that case it was not pretended that the

jury could infer that the defendant had been guilty of any offense, but Chief Justice CHURCH sustained the objection that the question tended to degrade.

So, in the case at bar, the fact that the jury was informed of the acquittal of Ogle, could have no greater effect in curing the error than if no such evidence had been given but the jury instructed as to the presumption of his innocence of that indictment.

The objection to this evidence was well taken and should have been sustained, and the error in its reception was not cured by the proof of the defendant's acquittal.

*Randolph B. Martine,* district attorney (*De Lancey Nicoll,* assistant), for the people, respondent.

BRADY, P. J.—The appellant was tried for murder in the first degree, the charge being that he stabbed and killed one James A Brown, on the 1st of December, 1882. The case on the part of the people rested chiefly on the evidence of Lawrence Rogers and John Hubbell, whom the appellant's counsel regarded as accomplices or accessories. The evidence of these witnesses, though perhaps substantially the same as to the occurrence which led to the death of the deceased, nevertheless differed in some particulars. The controversy, it would appear' was commenced by the deceased, who addressed a very offensive observation to the brother of the appellant and subsequently to the appellant himself.

Several errors are presented for consideration. The appellant was a witness on his own behalf. He emphatically denies that he either took part, or gave any aid or encouragement to the stabbing. His answer to a question on that subject was: "As God is my judge, I did not." Upon cross-examination, he was asked: "Do you recollect being arrested for shooting a man in front of Miner's theater?"

This was objected to, but allowed, and an exception taken.

Mr. Purdy, who was conducting the prosecution, then repeated the question, and the appellant answered: "I recollect being accused of shooting a man." The question was then

asked . " Q. You were indicted, were you not? A. I was. Q. What was the man's name? A. It slipped my memory. Q. Edward F. Peters? A. Peters, I believe, is his name. Q. You recollect being tried, do you not? A. Yes, sir. Q. You were acquitted, were you not? A. I was acquitted. Q. Was Peters there, the man you shot at? A. He took the stand; yes, sir. Q. You did not shoot at him? A. No, sir. Q. At somebody else? A. I don't know anything about that. The jury said I did not; they discharged me without leaving their seats. Q. You say you did not shoot at him, do you? A. Yes, I do."

The appellant, through his counsel, urges, with great energy, that injustice was done by this examination.

It will have been perceived that the witness was interrogated as to an accusation of which he had been acquitted after a trial, and also as to the merits of the charge, inasmuch as two of the questions at least relate to the commission of the offense involved, but my brethren think it was not prejudicial to him in any respect, because of his acquittal, which he stated. I yield to this view, but I do not accept it. A trial for a criminal offense, resulting in an acquittal, does not always remove the stain of the accusation. There are multitudes who decry verdicts of that kind, even though they know nothing of the person charged or the proof against him. The accusation is a reproach, and leaves an impress which may never fade, and which neither time nor subsequent unblemished conduct can efface. Therefore, it seems to me that the exposition of the occurrence, when it was without legal significance to the prosecution, was not in accord with the principles of evidence which prohibit irrelevant testimony, and proclaims its reception wrong, unless clearly innocuous. The true rule, and the only one that can be sustained upon the principle, is, that the intendment of law is that the error in the admission of evidence is prejudicial to the party objecting, and will be ground for reversal unless the intendment is clearly repelled by the record. Coleman v. People, 58 *N. Y.* 555.

The appellant also complains that evidence designed to show flight on his part, to avoid the consequences of the offense charged, was improperly admitted. It was slight in character,

it is true, and, therefore, kindred to that considered in Ryan *v.* People (79 *N. Y.* 601), but, as said in that case, similar evidence has been allowed upon the theory that the jury would give it such weight as it deserved, depending upon the surrounding circumstances. It was not error, therefore, to admit it. It does not appear to have been referred to in the charge of the learned recorder, and no doubt was treated as having no weight.

The appellant also complains that the following requests should have been granted, namely :

" *Seventh.* That the acts necessary for corroboration must be inconsistent with the innocence of the defendant, and which excludes every hypothesis but that of guilt.

" That the jury is justified in requiring every fact sworn to by the witnesses, Rogers and Hopper, to be corroborated to its satisfaction, and, if not so corroborated, to reject such facts as not proven."

These requests are too broad. The rule is shown by Chief Justice RUGER in the People *v.* Plath (4 *N. Y. Crim. Rep.* 53 ; 100 *N. Y.* 593), who said : " The rule, as to the corroboration of an accomplice, is stated in *Roscoe's Crim. Ev.* 122, as follows : ' That there should be some fact deposed to, independently altogether of the evidence of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.' *Russell on Crimes,* 962, says : ' That it is not sufficient to corroborate an accomplice as to the facts of the case generally, but that he must be corroborated as to some material fact or facts which go to prove that the prisoner was connected with the crime charged.' 1 *Greenleaf on Ev.* 381, lays down the rule as held by some, ' that it is essential that there should be corroborating proof that the prisoner actually participated in the offense, and that when several prisoners are to be tried, confirmation is to be required as to all of them before all can be safely convicted—the confirmation of the witness, as to the commission of the crime, being regarded as no confirmation at all as it respects the prisoner.' "

The request which preceded the first mentioned was as follows : " *Sixth.* That even if the jury find corroboration as to some

of the evidence of the witnesses—Rogers and Hopper—it is not sufficient to justify a conviction, unless that corroboration tended to connect the defendant with the commission of the crime," and must be considered in connection with it. The jury were instructed by it, that evidence of the witnesses named was not sufficient to justify a conviction unless corroborated, and the corroboration tended to connect the appellant with the commission of the crime. This was all the appellant was entitled to— not that the acts necessary for corroboration must be inconsistent with his innocence, and such as to exclude every hypothesis but that of guilt. Evidence of corroboration may consist of a series of facts having no force unless in combination, and may be shown by more than one witness, or as occurring on more than one occasion. If they tend to establish guilt it is enough, and such is the rule as stated by Chief Justice RUGER. It is not necessary, therefore, that each act should have the important and efficient agency suggested.

The second request is subject to singular criticism. The proposition is, that the jury would be justified in requiring every act sworn to by the witnesses named to be corroborated to their satisfaction. If the request had been as to material facts, it would have presented a very different complexion. The learned Recorder had, at the request of the appellant's counsel, submitted this proposition to the jury, and that was all he was entitled to : " *Fifth.* That the testimony of the witnesses, Hopper and Rogers, is not sufficient to warrant a conviction, unless the jury are satisfied by other evidence that they are corroborated by other evidence, which, independent of the evidence of Rogers and Hopper, would tend to show the complicity of the defendant in the killing."

It should be added that no exception was taken to the charge, which was elaborate and eminently fair. The record, for these reasons, presents no error entitling the appellant to a reversal of the judgment, and it must, therefore, be affirmed.

MACOMBER, J., concurs.